UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LEONA TUMINELLO** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 11-602** |
| | * | |
| **PETCO ANIMAL SUPPLIES STORES, INC.** | * | **SECTION "L"(3)** |

## ORDER & REASONS

The Court has pending before it Defendant Petco Animal Supplies Stores, Inc.'s Motion for Summary Judgment (Rec. Doc. 18) and Plaintiff Leona Tuminello's Motion to Continue Trial (Rec. Doc. 20). The Court has reviewed the briefs and the applicable law and heard oral argument and now issues this Order and Reasons.

### I.   BACKGROUND

This tort case arises out of an accident in a Petco pet store in Kenner, Louisiana. Plaintiff Leona Tuminello alleges that on or about September 11, 2010, she slipped and fell on some display cards on the floor of a store owned by Defendant Petco. Plaintiff alleges that the display cards were an unreasonably dangerous condition and that Defendant was negligent. Plaintiff filed suit in the 24th Judicial District Court for the Parish of Jefferson, alleging injuries to her neck, back, and hands and seeking damages for pain and suffering, mental anguish, medical expenses, and lost wages. Defendant Petco removed to this Court on the basis of diversity jurisdiction. Petco has answered and denies liability.

In connection with Petco's motion for summary judgment, the parties have submitted three deposition transcripts which constitute the summary judgment record: the depositions of the Plaintiff; Jenny Youman, a store employee; and Georgia Took, the store manager.

Plaintiff testified that she went to the store at about 9:15 a.m. on Saturday morning, September 11, 2010, about fifteen minutes after the store opened.  She went to the back wall to get dog food, then walked along a different aisle that also displayed dog food, and slipped and fell.  She states that she did not see anything on the floor before she slipped, but that after she slipped she saw several white paper cards on the floor around her.  Plaintiff says that a male witness (who has not been identified) picked up the cards and handed them to a Petco employee.  Plaintiff testified that the employee brought her to a break room and gave her some water and that Plaintiff stayed there for ten minutes.  Plaintiff states that she told the cashier (who has not been deposed) that she wanted to write her name and phone number down, but that she did not expressly ask to fill out an accident report at that time.

Ms. Youman, a store employee on duty at the time of the accident, testified that a male store patron came up to her and told her that someone had fallen.  Ms. Youman stated that she found the Plaintiff sitting on the floor and helped her up, that the Plaintiff declined to fill out an accident report, and that Plaintiff left the store while Ms. Youman was alerting her manager, Ms. Took.  Ms. Youman does not remember seeing anything on the floor near the Plaintiff or being handed any cards by the male witness.  She also testified that as part of her job duties, she frequently walks through the store and is "constantly ... checking" the aisles on an ongoing basis. (Rec. Doc. 23-5 at 19-20).

Ms. Took, the store manager, testified that every day before the store opens she "walk[s] the store to make sure that everything is in place, that they've recovered it from the night before, which mean straightening up everything" and checks every aisle.  (Rec. Doc. 23-4 at 9).  She testified that she did so on the morning in question and that she did not notice anything on the

aisle where Plaintiff fell. She did not see the accident or talk to the Plaintiff. She filled out an accident report, and it appears she did so based on the facts as related to her by Ms. Youman.[1]

There were no store cameras covering the aisle in which Plaintiff fell. The floor of the dog food aisle was white linoleum speckled with red and blue dots. The "display cards" in question were apparently index-card-sized pieces of paper, white on one side and white with a red border on the other, which listed sale prices for dog food. The cards fit into a "c-channel", a groove on the front of the shelves with a plastic lip at the top and bottom designed to keep the cards from falling out. The testimony suggests that there would have been six such cards in c-channels on the aisle where Plaintiff fell; that the cards were rotated approximately every three weeks when sale prices changed; that the cards were changed on Saturday nights after the store closed; and that spare cards were kept in the manager's office.

## II.     PRESENT MOTIONS

The Court has two motions pending before it. First, Defendant Petco has filed a motion for summary judgment on the basis that Plaintiff cannot prove the statutory elements of the existence of a condition posing an unreasonable risk of harm, constructive notice, or failure to exercise reasonable care. Plaintiff responds that the circumstantial evidence raises genuine issues of fact that preclude summary judgment.

Second, Plaintiff has filed a motion to continue the trial, on the basis that Plaintiff has an appointment with a neurosurgeon shortly before the November 7, 2011 trial date to determine

---

[1]The accident report states that Ms. Youman said that the unidentified male witness said that "she must have fallen on a piece of paper." (Rec. Doc. 23-4 at 74). At her deposition, Ms. Youman did not recall the male witness saying anything like that. (Rec. Doc. 23-5 at 11-12). To the extent that this is an inconsistency, it is immaterial to the Court's conclusion.

whether she needs back surgery. Defendant opposes any continuance because Plaintiff has previously asserted that she does not want to have another back surgery, and because Plaintiff is attempting to use this as an excuse to develop another expert witness.

## III. LAW AND ANALYSIS

### A. Motion for Summary Judgment

A district court can grant a motion for summary judgment only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party [and a] fact [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986)). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50

(internal citations omitted).

Louisiana Revised Statutes § 9:2800.6 defines a merchant's obligations and a plaintiff's burden of proof in slip-and-fall cases:

- A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
- B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
  - (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
  - (2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
  - (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
- C. Definitions:
  - (1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
  - (2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. ...
- D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.

La. Rev. Stat. 9:2800.6. Thus, a plaintiff must prove an unreasonable risk, actual or constructive notice of the risk, and failure to exercise reasonable care. In this case, the decisive issue is notice.

Plaintiff proceeds on a constructive notice theory because there is no evidence that Petco

5

had actual notice of cards on the floor or that a Petco employee created the risk by putting the cards on the floor. Section 2800.6, as interpreted by the Louisiana Supreme Court, puts the burden on the plaintiff to provide "positive evidence showing that the damage-causing condition existed for some period of time, and that such time was sufficient to place the merchant defendant on notice of its existence." *White v. Wal-Mart Stores, Inc.*, 97-0393, p. 1 (La. 9/9/97); 699 So. 2d 1081, 1082. "[T]here is no bright line time period" for the plaintiff to show, and whether the time period is sufficiently lengthy to put the defendant on notice "is necessarily a fact question," but the fact question only exists if the plaintiff makes "the prerequisite showing of *some* time period." *Id.* at p.4; 699 So. 2d at 1084 (emphasis added). "A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute." *Id.*

No person has testified that they saw the display cards on the floor before Plaintiff allegedly slipped on them. Plaintiff admittedly lacks any concrete evidence regarding this temporal element. To avoid summary judgment, Plaintiff must show based on circumstantial evidence and inference that there is a genuine dispute of fact regarding the 2800.6 "temporal element."

In some cases, circumstantial evidence may raise a factual issue regarding constructive notice sufficient to defeat summary judgment. For example, in *Bagley v. Albertsons, Inc.*, the plaintiff claimed to have slipped on a liquid that store employees testified was probably meat blood. 492 F.3d 328, 330 (5th Cir. 2007). Although the plaintiff did not provide direct evidence of when the liquid hit the floor, she did present evidence that the spill "covered a significant area

extending through the aisle and into an adjoining back aisle," which supported "a reasonable inference that the liquid leaked from a customer's cart." *Id.* at 331. Furthermore, the plaintiff testified that the aisle was empty when she fell which "support[ed] a reasonable inference that the other cart had sufficient time to clear the aisle, implying the passage of 'some period of time.'" *Id.* at 331. Therefore, constructive notice was a fact issue and the grant of summary judgment was reversed. *Id.*; *accord Keehn v. Office Depot, Inc.*, No. 06-3524, 2007 WL 1198941, at *2 (E.D. La. Apr. 20, 2007) (denying summary judgment regarding slip-and-fall in puddle outside bathroom because "a reasonable inference can be drawn that the faulty urinal in this case was stuck for some time, long enough for water to accumulate on the bathroom floor and subsequently migrate into the hallway.").

But the inferences in *Bagley* and *Keehn* were permissible because of the fluid physical nature of the dangerous condition and its ability to spread over time. The Fifth Circuit distinguished *Bagley* on that basis in *Williams v. Home Depot USA, Inc.*, 341 F. App'x 976 (5th Cir. 2009). In *Williams*, the plaintiff alleged that he slipped on sand in the defendant's store. *Id.* at 977. The plaintiff argued that the sand leaked from a bag which must have been moved by somebody, and it must have leaked before he entered that area of the store. But the Fifth Circuit held that the sand was "inert" and not "an expanding fluid" that one could reasonably infer had spread along a floor over a period of time. *See id.* at 977-78. Therefore, the plaintiff fell "into the Louisiana Supreme Court's category of a plaintiff 'who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall,'" and summary judgment was appropriate. *Id.* at 978 (quoting *White*, 97-0393, p.4; 699 So. 2d at 1084.

Other cases have granted or affirmed summary judgment over similar speculative arguments in opposition. In *Watson v. TJ Maxx*, the plaintiff claimed to have slipped on a piece of paper while exiting a store bathroom. No. 08-3789, 2009 WL 1940976, at *1 (E.D. La. July 6, 2009) (Engelhardt, J.). The plaintiff argued that the paper had been on the floor for a period of time because some testimony suggested that no person had walked by the bathroom for more than fifteen minutes. *See id.* at *3. But the plaintiff herself did not see the paper before she slipped, and therefore the court rejected her chain of "negative reasoning" as speculative and insufficient to meet the statutory requirement of "positive" evidence of duration. *See id.* Likewise, in *Martin v. Kroger Co.*, the Fifth Circuit affirmed summary judgment against a plaintiff who claimed to have slipped on some grapes two aisles away from the produce department. 2001 WL 1070538 (5th Cir. 2001). The plaintiff argued that she did not have grapes in her cart, so the grapes must have fallen on the floor earlier in the day when an employee stocked the produce department, although the testimony established that the grapes would not have gone down that aisle. *See id.* at *3. The Fifth Circuit held that this was too speculative and did not constitute "positive evidence" to satisfy her burden under the statute and *White v. Wal-Mart*, and affirmed summary judgment.

With that case law in mind, the Court will analyze the purportedly disputed facts and inferences from circumstantial evidence that Plaintiff articulates to oppose Petco's motion. First, Plaintiff attacks Ms. Took's and Ms. Youman's credibility. She argues that Ms. Took and Ms. Youman failed to comply with store policies by not immediately making an accident report or taking photographs of the scene. Therefore, Plaintiff speculates that they may be trying to cover for themselves and are "quelling an investigation which may have inculpated" them, and that

Ms. Youman may be "attempting to cover for herself as she may have been the one responsible for placing the cards on the ground." (Rec. Doc. 23 at 10).  The suggested inference of a cover-up is wholly speculative, and certainly does not constitute positive evidence that the cards had been on the floor for a period of time as required under the statute and *White*.

Second, Plaintiff attempts to build a circumstantial chain to show that the cards could have been on the floor overnight.  Plaintiff observes that the accident occurred about fifteen minutes after the store opened and "therefore there were hardly any customers present who could have knocked the cards to the ground immediately before the accident occurred."  (Rec. Doc. 23 at 3).  Plaintiff also cites the employees' testimony that the cards in question were dog food sale notices that were generally changed on Saturday nights, and that "[i]t can therefore be assumed that on occasion these cards may be left on the shelves and it may not be unreasonable to assume that an employee may be working and leave these cards on the ground, particularly at night and forgot to go back and pick them up."  (Rec. Doc. 23 at 4-5).  However, Plaintiff's very language demonstrates the speculative nature of this reasoning; "may not be unreasonable to assume" falls far short of meeting her burden.  The undisputed testimony is that Plaintiff, Ms. Took, and Ms. Youman did not see the cards on the floor, and that there were other patrons in the store between the time it opened and the time of the fall.  And there are no inferences to be drawn from the display cards themselves, as there were in *Bagley* and *Keehn*.  The purported chain of reasoning is more like the "negative" evidence held to be insufficient in *Watson*.

Third, Plaintiff cites an inspection of the store by Plaintiff's counsel on the afternoon of August 2, 2011, almost a year after the accident, that revealed some objects on the floor of the store.  She contends that this thus supports an inference that cards were on the floor on the

9

morning of September 11, 2010 and that Ms. Took's and Ms. Youman's testimony regarding their inspections of the store is not credible. The suggested inference is that, because there were a few objects on the floor one afternoon in August, 2, 2011, then the cards that Plaintiff allegedly slipped on may have been on the floor for a period of time before she slipped on them on the morning of September, 11, 2010. The August 2, 2011 inspection occurred almost a year after the incident in question, on a different day of the week, at a different time of day, and its relevance is therefore tenuous at best. It certainly does not rise to the level of positive evidence regarding the duration that the specific cards that Plaintiff allegedly slipped on were on the floor on the morning of the accident, as required by the statute.

      Fourth, Plaintiff apparently argues that "this is a defective display case" and that there are fact issues precluding summary judgment with respect to whether the display cards were too small for the c-channel, or the c-channel was constructed in a manner such that the cards were likely to fall out. Assuming that Plaintiff has sufficiently articulated the legal basis for this argument, it is purely speculative and unsupported by any competent summary judgment evidence. Contrary to Plaintiff's characterization of her testimony, Ms. Youman did not state that "it is very conceivable that some of these cards do fall to the ground on some occasions." (Rec. Doc. 23 at 12).[2] She also did not testify that the "dog food area is a 'hot spot' for these

---

[2] Q. But have you ever had occasion where you noticed them to come out of the sleeves, or for whatever reason, to be on the floor?
A. I don't actually recall it. But, I mean, I'm not going to say it hasn't happened. But I don't recall. Because they are – you know, every one of them in every section has a way of hooking.
Q. Uh-huh.
A. And that's the way they go up, you know? And so I'm not going to say I haven't picked one up on the floor. But at the moment, I can't say I'm picking cards up all the time.

index cards to be inspected for not being knocked off of the shelves." (Rec. Doc. 23 at 12).[3]

Plaintiff has hypothesized a physical mechanism through which the cards *might* have fallen out of the c-channel, but there is no testimony that it had ever occurred, and in fact Ms. Youman's testimony was that moving bags of dog food would not dislodge the cards in any way. (Rec. Doc. 23-5 at 41-42).[4]

The deficiency common to all of Plaintiff's arguments is that none of them rise to the level of "positive evidence" that the cards she allegedly slipped on were on the floor for any period of time. It is Plaintiff's burden under the law to prove that temporal element. She has failed to do so, and falls "into the Louisiana Supreme Court's category of a plaintiff 'who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall.'" *Williams*, 341 F. App'x at 978 (quoting *White*, 97-0393, p.4; 699

---

(Rec. Doc. 23-5 at 34-35).

[3] Q. Is it something that you think is fairly secured, or can they come out? Can they fall? Can they drop? I'm trying to understand how they may have gotten on the floor, if they did? How did they get on the floor?
A. Someone would have to physically almost intentionally do it. Or I don't even know, like if she possibly fell and swiped for it, and it if there was one on the floor. I don't know. I mean, I wasn't when she fell. I wasn't present.
.....
Q. All right. So the dog food, you said, generally it's common that the dog is pulled from the shelves and that these display cards fall off?
A. That's not what I said at all.
(Rec. Doc. 23-5 at 37-38).

[4] Q. Have you ever seen the channels knocked off or knocked down that had –
A. Oh, no.
Q. –to be picked back up?
A. No.
Q. So these are pretty sturdy?
A. Yes.
(Rec. Doc. 23-5 at 41-42).

11

So. 2d at 1084). Accordingly, Defendant's motion for summary judgment is granted.

### B.     Motion to Continue

Because the Court has granted Defendant's motion for summary judgment, Plaintiff's motion to continue the trial date is MOOT.

## IV.    CONCLUSION

For the foregoing reasons,

IT IS ORDERED that Defendant's motion for summary judgment (Rec. Doc. 18) is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE. Plaintiff's motion to continue the trial (Rec. Doc. 20) is DENIED AS MOOT.

New Orleans, Louisiana, this 28th day of September, 2011.

_____
UNITED STATES DISTRICT JUDGE